All concur with EARL, C., for reversal, except DWIGHT, C., dissenting.

Order reversed, and judgment ordered for plaintiff on verdict.

---

DAVID OGDEN, Respondent, *v.* GEORGE A. LATHROP, Appellant.

Plaintiff borrowed of defendant $2,500, giving his note therefor at four months. He deposited fifty shares of stock as collateral security and gave a stock note, in and by which he promised to pay the sum borrowed on one week's notice, and authorized defendant, in case of nonpayment, to sell the stock on plaintiff's account; also giving defendant authority "to use, transfer or hypothecate the same" at his option, he being required, on payment or tender of the loan and interest, to return an equal quantity of the stock and not the specific stock deposited. Defendant sold the stock without plaintiff's knowledge. Subsequently the corporation, whose stock was pledged, failed. The holder of plaintiff's note, at his request, sold fifty shares of the stock on his account, applied the proceeds on the note and plaintiff paid the balance. In an action for the conversion of the stock pledged, *held*, that defendant was authorized, under the contract, to sell the stock on his own account, he being simply required to return the same quantity of stock when the loan should be repaid; and as the same quantity of stock was returned and sold on plaintiff's account, at request, defendant was not liable.

*Ogden* v. *Lathrop* (3 J. & S., 73) reversed.

(Argued January 6, 1875; decided May term, 1875.)

APPEAL by defendant from the judgment of the General Term of the Superior Court of the city of New York in favor of plaintiff, entered upon an order denying a motion for a new trial, and directing judgment upon a verdict. (Reported below, 3 J. & S., 73.)

The action was to recover for the alleged wrongful conversion of fifty shares of the capital stock of the Columbian Insurance Company.

On the 30th day of December, 1865, the plaintiff borrowed of the defendant $2,500 and gave his note for the same at four months. At the same time, to secure the payment of the sum thus borrowed, he executed and delivered to the defendant the following instrument :

" $2,500.                    NEW YORK, *December* 30, 1865.

"At one week's notice I promise to pay to the order of George A. Lathrop $2,500, for value received, with interest at the rate of seven per cent per annum, having deposited with the payee, as collateral security, fifty shares of Columbian Insurance Company stock of the city of New York, and in case this note shall not be paid within one week's notice, give the said payee, or order, authority to sell the said security or any part thereof, for my account, on the maturity of this note, or at any time thereafter, at the brokers' board, or at public sale, at the payee's discretion, and with authority to use, transfer or hypothecate the same at payee's option, payee being required, on payment or tender, at the proper time, of the amount loaned and interest, to return an equal quantity of said security, and not the specific stock deposited, and to apply so much of the proceeds of said security to the payment of this note as may be necessary to pay the same, with all interest due thereon, and also to the payment of all expenses attending the sale of the said security ; and in case the proceeds of the said security shall not cover the principal, interest and expenses, I hold myself bound to pay the balance.

"DAVID OGDEN."

At the same time plaintiff delivered to the defendant two certificates, each for twenty-five shares of the stock, with two blank transfers and powers of attorney authorizing a transfer

of the stock. The stock was transferred on the books of the company to the defendant, and on the 3d day of January, 1866, defendant caused the stock to be sold for $3,776. All these transactions were between the plaintiff and one Foster, who used the name of the defendant with his consent, the latter really having no interest in the transaction. Foster became the holder of the note, and plaintiff settled the same with him, paying him in full the amount loaned, except a credit of $112.50, which arose as follows: On the first day of May Foster told plaintiff that he had got his fifty shares of stock, and plaintiff ordered him to sell the same, which he did (the Columbian Insurance Company having failed) for the sum of $112.50, which was credited on the money borrowed. Until after this time plaintiff did not know of the first sale of his stock, and after he learned it he commenced this suit, alleging that that sale was illegal and a wrongful conversion of his stock. The court directed a verdict for him for the sum of $5,246, which was rendered accordingly. Exceptions were ordered to be heard in the first instance at General Term.

*Wm. G. Choate* for the appellant. As pledgee of the stock defendant had a right to have it transferred into his own name while he held it as security. (*Day* v. *Holmes,* 103 Mass., 306.) Defendant had a right to transfer the debt with the collaterals to Foster. (*Lewis* v. *Mott,* 36 N. Y., 395; *Chapman* v. *Brooks,* 31 id., 84; Story on Bail. [8th ed.], § 324; *Jarvis* v. *Rogers,* 15 Mass., 408.) The delivery of the blank transfer and power of attorney to Foster with the certificate was a proper mode of transferring the pledge to him, and released defendant from all obligation in respect thereto. (*Fatman* v. *Lohback,* 1 Duer, 361.) One who, without knowledge of an illegal act, takes the benefit of it, makes it his own by adoption and is liable to all the civil consequences of the act. (*Cobb* v. *Dows,* 10 N. Y., 335; *Hilberg* v. *Halton,* 2 H. & C., 822; *Heald* v. *Carey,* 11 C. B., 977.)

*Ambrose Monell* for the respondent. The sale of the stock by defendant without notice to plaintiff and without any

demand was an unlawful conversion, and authorized this action. (*Stearns* v. *Marsh*, 4 Den., 227; *Cortelyou* v. *Lansing*, 2 Cai. Cas., 200; *Wilson* v. *Little*, 2 Comst., 443; *Lewis* v. *Graham*, 1 Abb. Pr., 106; *Castello* v. *City Bk.*, 1 N. Y. Leg. Obs., 25; *Markham* v. *Jaudon*, 41 N. Y., 235; *Stenton* v. *Jerome*, 54 id., 480 *Wheeler* v. *Newbold*, 16 id., 392; *Millikin* v. *Dehon*, 10 Bosw., 325; *Jackson* v. *Topping*, 1 Wend., 388.) The instrument being partly written and partly printed, the written portion must control the construction if there was an inconsistency. (*Leeds* v. *Mechs. Ins. Co.*, 4 Seld., 351; *Harper* v. *Alb. M. Ins. Co.*, 17 N. Y., 194; *Weisser* v. *Maitland*, 3 Sand., 318; *Woodruff* v. *Com. M. Ins. Co.*, 2 Hilt., 122; *Benedict* v. *Ocean Ins. Co.*, 31 N. Y., 389.) The sale before maturity and refusal to pay was a conversion for which defendant was liable. (*Rawls* v. *Deshler*, 4 Abb. Ct. App. Dec., 12.) There was no ratification by Ogden of either the acts of Foster or of defendant Lathrop. (*Nixon* v. *Palmer*, 4 Seld., 401; *Seymour* v. *Wyckoff*, 6 id., 224; *Roach* v. *Coe*, 1 E. D. S., 175; *Smith* v. *Tracy*, 36 N. Y., 86.)

EARL, C. I will assume, without any examination, that plaintiff's claim, if he has any, for the sale of his stock on the 3d day of January, 1866, is against the defendant, and it will be necessary therefore only to determine the rights of the defendant under the instrument dated December 30, 1865, pledging the stock. That instrument was given as collateral security to a note at four months for $2,500 borrowed of defendant, and although the loan might have been called in under that instrument by a notice of one week, yet it was manifestly expected by the parties that it should run for the full term of four months, as it in fact did, and it is proper to keep this circumstance in mind in construing the instrument. I suppose this instrument was made payable upon one week's notice, so that if the security shall depreciate or become precarious before the maturity of the principal note the defendant could call in the loan, and in default of payment realize upon the security.

This instrument first contains a power of sale upon default of payment. That would be a sale which, if regularly made, would bind the plaintiff. The stock would be sold as plaintiff's by defendant, as pledgee. The sale would have to be at broker's board or at public sale, and could be made only after the one week's notice, and after notice to the plaintiff of the time and place of sale. (*Stearns* v. *Marsh*, 4 Denio, 227; *Markham* v. *Jaudon*, 41 N. Y., 235; *Steuben* v. *Jerome*, 54 id., 480.) The sale in question was made before there was any default, and without any notice of any kind to the plaintiff, and hence cannot be upheld under the power first conferred in the instrument.

But further on in the instrument is this clause: "With authority to use, transfer or hypothecate the same at payee's option, payee being required, on payment or tender at the proper time of the amount loaned and interest, to return an equal quantity of said security, and not the specific stock deposited." Force must be given to this clause. Provision had already been made for a sale upon default. That sale was carefully guarded, as it was to be on account of plaintiff and binding upon him. By that sale the plaintiff would be deprived of his stock, and he would have no right to redeem or reclaim the same or a like amount. This was to be a sale on defendant's account. This clause was inserted so that if, during the running of the loan it was inconvenient for defendant to carry it, he could sell, transfer or hypothecate the stock to realize the money. It was doubtless inserted as an inducement to the defendant to make the loan, and was, in a printed form, used for such purposes. No notice of a sale under this clause was required, because plaintiff had no interest whatever in the sale. The defendant sold the stock as his, simply taking upon himself the burden of returning to the plaintiff, upon demand, when the loan should be paid, the same quantity of the stock. The plaintiff would then be in the same condition that he was in when he pledged the stock. If a loss was made upon a sale of the stock, or it was in any way sacrificed, it fell upon the defendant and not upon the

plaintiff. The sale contemplated by this clause was not a sale by defendant as pledgee, because it was not a sale after default, or to realize the money borrowed for which the stock was held as security. It was a sale by virtue of the contract, and the only obligation imposed thereby upon the defendant was to return the same quantity of stock, and so long as he was ready to do that upon demand he was not in default.

It follows, therefore, that defendant committed no wrong when he sold the stock, and as the same quantity of stock was returned to the plaintiff, and sold at his request and upon his account, I cannot perceive that he has any just ground of complaint. He was in the same position when the loan matured and was paid as he would have been in if defendant had not sold the stock.

The judgment must be reversed and new trial granted, costs to abide event.

All concur.

Judgment reversed.